IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| MATTHEW BONNSTETTER, PETER SLOWICK, ILIR SHEMITRAKU, PAUL SAUSEDA, DAVID GUTIERREZ, ANDREA BUTTITA, and TAREQ KHAN, | ) ) ) ) ) | 13 C 4834 |
| Plaintiffs, | ) ) | Judge Virginia M. Kendall |
| v. | ) ) |  |
| CITY OF CHICAGO, a Municipal Corporation, and CAPFS/LEPS JOINT VENTURE, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Matthew Bonnstetter, Alexander Muniz, and Peter Slowik filed a putative class action in the Circuit Court of Cook County, Illinois on June 3, 2013. The Complaint alleged violations of the 2011 City of Chicago Hiring Plan approved in *Shakman et al. v. Democratic Organization of Cook County et al.* (Case No. 69 C 2145, Dkt. No. 2284 (approving Dkt. No. 2279, a motion to approve and substitute the previous hiring plan)), which the most recent *Shakman* Settlement Order and Accord ("*Shakman* Accord") incorporates by reference. (Dkt. No. 30-1 at 9 ("The New Plan shall be fully incorporated by reference into the Accord."); *see also* Case No. 69 C 2145, Dkt. Nos. 642, 2284 (orders adopting the *Shakman* Accord and the 2011 City of Chicago Hiring Plan).) The Complaint also alleged equal protection violations under the Illinois Constitution. The Defendant, the City of Chicago, removed this action to federal court on July 3, 2013 (Dkt. No. 1), and subsequently moved to dismiss the Plaintiffs' complaint (Dkt. No. 8).

The Plaintiffs filed a First Amended Complaint on October 14, 2013. The First Amended Complaint did not include Muniz as a plaintiff. It, however, did add Ilir Shemitraku, Paul Sauseda, David Gutierrez, Andrea Buttita, and Tareq Khan as plaintiffs. The First Amended Complaint also added two claims, conspiracy under 42 U.S.C. § 1983 and conspiracy under 42 U.S.C. § 1985(3), and one defendant, CAPFS/LEPS Joint Venture. The Defendants now move to dismiss the First Amended Complaint. (Dkt. No. 44; Dkt. No. 65.) For the reasons stated herein, this Court grants the Defendants' motions.

## BACKGROUND

For purposes of this motion, this Court takes all well-pleaded allegations as true and draws all reasonable inferences based on those allegations in the plaintiff's favor. *Golden v. State Farm Mutual Automobile Insurance Co.*, 745 F.3d 252, 255 (7th Cir. 2014).

The Chicago Police Department is responsible for hiring Chicago police officers. (Dkt. No. 30 at ¶ 16.) The Chicago Police Department published a job announcement in October 2010 seeking applicants for the position of Chicago police officer. (Dkt. No. 30 at ¶ 19.) According to the job announcement, the hiring process included a written examination, a background investigation, a medical examination, a psychological test, a drug screening, a physical fitness test, and other pre-employment procedures. (Dkt. No. 30-3.) Each Plaintiff took the 2010 Police Officer examination and received a lottery number randomly assigned to candidates. (Dkt. No. 30 at ¶¶ 39, 47, 61, 74, 81, 87, 93.)

In July 2012, Plaintiff Bonnstetter participated in a psychological interview at the Center for Applied Psychology and Forensic Studies ("CAPFS"). (Dkt. No. 30 at ¶ 40.) According to Bonnstetter, his interviewers did not ask him anything of substance. (Dkt. No. 30 at ¶ 42-43.) Although allegedly told by his interviewers that he had nothing to worry about (Dkt. No. 30 at ¶ 43), Bonnstetter learned that he failed the psychological assessment. (Dkt. No. 30 at ¶ 44-45.)

Plaintiff Slowik also participated in a psychological interview at CAPFS, which took place in November 2012. (Dkt. No. 30 at ¶ 53.) According to Slowik, his interviewer did not ask him anything of substance either. (Dkt. No. 30 at ¶ 52.) His interviewer did ask him about his experience in the United States Marine Corps and his views on war. (Dkt. No. 30 at ¶ 55.) Although he left the interview under the impression that he was a perfect candidate (Dkt. No. 30 at ¶ 56), Slowik learned in February 2013 that he failed the psychological assessment (Dkt. No. 30 at ¶¶ 57-59).

Plaintiff Shemitraku reported for a polygraph test related to his application to be a Chicago police officer in July 2012. (Dkt. No. 30 at ¶ 62.) A police detective conducting the polygraph test asked Shemitraku about his religion, national origin, and citizenship. (Dkt. No. 30 at ¶¶ 63-64.) The police detective accused Shemitraku of hiding something during the polygraph test despite Shemitraku's assertions that he answered the police detective's questions honestly. (Dkt. No. 30 at ¶¶ 65-67.) Shemitraku was removed from consideration for employment as a Chicago police officer for failure to cooperate during the polygraph test. (Dkt. No. 30 at ¶ 68.)

Plaintiff Sauseda turned forty years old on June 15, 2012. (Dkt. No. 30 at ¶ 75.) As a result, the Chicago police department removed him from consideration for employment as a Chicago police officer because he no longer met the age requirements of the 2011 City of Chicago Hiring Plan. (Dkt. No. 30 at ¶ 76.) Sauseda knew of others behind him in the queue who had been processed and placed in the police academy (Dkt. No. 30 at ¶ 77) and suggests that the City intentionally delayed his application so that he would no longer meet the age requirement (Dkt. No. 30 at ¶ 29).

Plaintiff Gutierrez, a veteran who served in the United States Marine Corps, participated in a psychological interview conducted by CAPFS. (Dkt. No. 30 at ¶ 83.) His interviewer asked

him about gangs and any affiliations Gutierrez had with gangs. (Dkt. No. 30 at ¶ 83-84.) There is no indication that his interviewer asked him about his veteran status. (Dkt. No. 30 at ¶¶ 81-86.) In December 2012, Gutierrez learned that he failed the psychological assessment. (Dkt. No. 30 at ¶ 85.)

Plaintiff Buttita has enough college credits to qualify under the 2011 City of Chicago Hiring Plan. (Dkt. No. 30 at ¶ 88.) She provided her transcripts to the Chicago Police Department, which confirmed they had received Buttita's transcripts. (Dkt. No. 30 at ¶¶ 89-90.) Yet Buttita received a letter notifying her that she failed to meet the education requirement and that she had been removed from consideration for employment as a Chicago police officer. (Dkt. No. 30 at ¶ 91.)

Plaintiff Khan reported for a polygraph test in November 2011. (Dkt. No. 30 at ¶ 94.) Khan cooperated with his examiner, who asked about Khan's use of valium following surgery and his upcoming arranged marriage in India. (Dkt. No. 30 at ¶¶ 96-98.) The examiner accused Khan of manipulating the polygraph test and told him that he would have to submit to another test. (Dkt. No. 30 at ¶¶ 99-100.) Instead of receiving notice of a re-test, Khan received a letter indicating that he had been removed from consideration for employment as a Chicago police officer. (Dkt. No. 30 at ¶ 101.)

Each Plaintiff alleges that the City did not provide a transparent hiring process capable of review, (Dkt. No. 30 at ¶ 24), and used that lack of transparency not only to manipulate the hiring process but also to violate the *Shakman* Accord and the 2011 City of Chicago Hiring Plan (Dkt. No. 30 at ¶ 25). The Plaintiffs seek to represent all candidates removed from consideration for employment as a Chicago police officer for non-reviewable reasons. (Dkt. No. 30 at ¶ 125-26.)

**LEGAL STANDARD**

A complaint must state a claim to relief that is plausible on its face in order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). A claim is plausible on its face when the allegations in the complaint support a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss, courts must accept all well-pleaded factual allegations as true, *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014), and must draw all reasonable inferences in the plaintiff's favor, *Yeftich*, 722 F.3d at 915. In addition to allegations contained in the complaint, courts may take judicial notice of relevant state court proceedings. *Virnich v. Vorwald*, 664 F.3d 206, 209 (7th Cir. 2011). Claims that do not raise a right to relief above the speculative level are subject to dismissal under Rule 12(b)(6). *Id.* at 212.

**DISCUSSION**

The Plaintiffs´ claims stem from their dissatisfaction with the implementation and execution of the 2011 City of Chicago Hiring Plan under the *Shakman* Accord. In addition to their elimination from consideration for the position of Chicago police officer, the Plaintiffs take issue with the purported lack of transparency concerning decisions made under the 2011 City of Chicago Hiring Plan. But that plan—which the parties in the *Shakman* case agreed to and the court approved and entered—spells out what the City must do to maintain a transparent hiring process. (Dkt. No. 30-2, Ex. B at 10.) This Court will not second-guess the court in the *Shakman* case by allowing the Plaintiffs to proceed with claims that try to add to the requirements imposed by 2011 City of Chicago Hiring Plan.

Nor will this Court allow the Plaintiffs to transform the *Shakman* Accord into a clearinghouse for all claims arising from the City's hiring practices. *Shakman* targets unlawful

political discrimination, and the only Plaintiff to allege any plausible unlawful discrimination cannot bring his claims due to the preclusive effect of his prior lawsuit based on the same facts alleged in this case. Further, none of the Plaintiffs has alleged a viable equal protection claim, whether under the Illinois Constitution, where Illinois law does not provide for a private cause of action for the Plaintiffs' claims, or as the basis for a conspiracy under federal law. Consequently, this Court dismisses the Plaintiffs' claims.

A.    *Shakman* **Claims**

The Plaintiffs' have not stated a claim under *Shakman*. "The *Shakman* case restricted the patronage hiring practices of various agencies of the City of Chicago and of Cook County." *Shakman v. Democratic Organization of Cook County*, 919 F.2d 455, 457 (7th Cir. 1990). The City instituted various hiring policies to comply with the *Shakman* case. *See*, *e.g.*, *United States v. Del Valle*, 674 F.3d 696, 698-99 (7th Cir. 2012) (describing multi-step hiring procedure used to implement *Shakman* policy). Under the *Shakman* Accord, the City cannot allow political reasons to influence any aspect of government employment or hiring. (Dkt. No. 30-1 at 5.) Once a plaintiff shows by clear and convincing evidence that politics factored into the City's employment or hiring decision with respect to that employee, the City bears the burden of showing that it would have made the same decision notwithstanding the protected conduct. *Shanahan v. City of Chicago*, 82 F.3d 776, 780 (7th Cir. 1996). There is a 180-day statute of limitations, measured from the time a violation would have been apparent to a reasonably prudent person, applicable to *Shakman* actions. *Brennan v. Daley*, 929 F.2d 346, 348 (7th Cir. 1991) (Title VII limitations period and equitable tolling applies to *Shakman* claims).

Here, the Plaintiffs misunderstand the purpose of the 2011 City of Chicago Hiring Plan, which is a means through which the City endeavors to comply with the prohibition against political hiring. Specifically, the *Shakman* Accord prohibits employment decisions based on: (1)

recommendations from public office holders or political party officials; (2) the fact that a person worked on a political campaign or belongs to a political organization or party; (3) whether a person contributed to or raised money for a candidate or public office; or (4) an applicant's views on political matters. (*See* Dkt. No. 30-1 at pp. 6-7.) The *Shakman* Accord allows "[a]ny individual who believes that he or she is a victim of unlawful political discrimination in connection with any aspect of City employment alleged to have occurred during the period that this Accord is in effect . . ." to file a complaint in federal court. (Dkt. No. 30-1 at 21.) The *Shakman* Accord does not allow an individual to file a *Shakman* claim in federal court simply because the City failed to follow its hiring plan; rather, the basis of the claim must be unlawful political discrimination. Nor does the *Shakman* Accord provide grounds for a claim that other "improper considerations" influenced the hiring process. In short, a *Shakman* claim is not the appropriate vehicle for any claim other than one based on unlawful political discrimination.

The only Plaintiff to allege unlawful political discrimination as defined by the *Shakman* Accord plausibly is Slowik, who claims that he disclosed his veteran status and his beliefs, perceptions, and experiences regarding war during the hiring process. (*See* Dkt. No. 30 at ¶ 55.) One could infer from this allegation that Slowik's disclosures led to his removal from the eligibility referral list for a position as a Chicago police officer. Because Slowik's disclosures implicate a "public policy issue" and his "views on government actions or failures to act," they fall within the scope of the unlawful political discrimination outlined in the *Shakman* Accord. (*See* Dkt. No. 30-1 at 7 (defining political reasons or factors).) In this regard, Slowik's allegations stand in contrast to those made by the other Plaintiffs as the latter simply do not fit within the conduct prohibited by the *Shakman* Accord.

But the doctrine of res judicata prevents *Slowik* from proceeding with his *Shakman* claim. In a prior action, Slowik filed a complaint fashioned as a "Complaint for Administrative Review" based on his failed psychological assessment in connection with the 2010 Police Officer examination. (Dkt. No. 52-2, Ex. 2 at ¶¶ 10-31.) Slowik and his co-plaintiffs agreed to dismiss that complaint with prejudice. (Dkt. No. 52-2, Ex. 3.) Under Illinois law, the doctrine of res judicata applies where there is (1) a final judgment on the merits in an earlier action by a court with competent jurisdiction, and the earlier action involved (2) the same cause of action and (3) the same parties or their privies. *Chicago Title Land Trust Co. v. Potash Corp. of Saskatchewan Sales Ltd.*, 664 F.3d 1075, 1079 (7th Cir. 2011).

Here, there is no dispute that Slowik alleges the same cause of action against the same party in this action as he did in the prior action. And this Court must treat Slowik's dismissal with prejudice as a final judgment on the merits. Although several unpublished decisions from intermediate-level appellate courts in Illinois question whether an agreement to dismiss an action with prejudice operates as a judgment on the merits for purposes of res judicata, *see*, *e.g.*, *Schwabe v. Hahn Agency, Inc.*, No. 1-11-0635, 2012 IL App (1st) 110635-U (Ill. App. Ct. 2012) (unpublished opinion), the United States Court of Appeals for the Seventh Circuit has interpreted such a dismissal as one on the merits under Illinois law. *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 530 (7th Cir. 2000) (voluntary dismissal pursuant to settlement agreement is a final judgment having preclusive effect); *Torres v. Rebarchak*, 814 F.2d 1219, 1223 (7th Cir. 1987) ("Illinois law is clear that a dismissal with prejudice is a final adjudication on the merits and will bar a subsequent suit brought on the same cause of action."). Absent intervening authority from the Illinois Supreme Court, this Court must treat Slowik's agreed dismissal with prejudice as one on the merits. Therefore, the doctrine of res judicata applies.

Contrary to Slowik's assertion, none of the exceptions to the rule against claim-splitting, which the doctrine of res judicata prevents, applies here. Illinois courts have relaxed the rule against claim-splitting to prevent claim preclusion where it would be inequitable to do so. *Walczak v. Chicago Board of Education*, 739 F.3d 1013, 1017 (7th Cir. 2014). One instance where it would be inequitable to preclude a split claim is where the defendant has acquiesced. *Id.* at 1018 (discussing Restatement (Second) of Judgments, which Illinois courts look to in this context). Here, there is no indication that the Defendants did anything to lead Slowik to believe that he could split his claims. The Defendants have raised res judicata as an affirmative defense in all of the motions to dismiss filed in this case (Dkt. No. 9; Dkt. No. 44; Dkt. No. 65) and objected to Slowik's duplicative lawsuits in the prior case (Dkt. No. 52-2, Ex. 2 at 7). Although the parties resolved the prior case with an agreed dismissal with prejudice, Slowik does not point to any agreement in which the Defendants agreed to allow Slowik to proceed with his claims despite a judgment on the merits. Slowik knew that the Defendants viewed the two cases as arising from the same set of operative facts and should have taken steps to ensure that he could proceed with his second lawsuit based on those facts. Because he did not do so, and because he cannot point to any agreement that would have allowed him to do so, one cannot reasonably infer that the Defendants agreed or acquiesced to the split claim. Therefore, principles of equity do not warrant application of an exception to the doctrine of res judicata based on the Defendants' agreement or acquiescence.

Further, Slowik sought similar relief in both actions (*compare* Dkt. No. 52-2, Ex. 1 at ¶ 32 *with* Dkt. No. 30 at 24-25 (both seeking injunctive relief and monetary compensation)) and filed each action in state court. These two considerations undermine his contention that the state court could not grant him the relief he sought. Finally, there is no risk of a continuing or

recurring wrong as the City has been dismissed from the *Shakman* case. (Case No. 69 C 2145, Dkt. No. 3861). Consequently, none of the exceptions to the doctrine of res judicata cited by Slowik applies here.

In addition, the statute of limitations bars the *Shakman* claims asserted by Bonnstetter, Shemitraku, Sauseda, and Gutierrez. According to the First Amended Complaint, Bonnstetter learned on July 25, 2012, that he would be removed from the eligibility referral list for a position as a Chicago police officer because he failed the psychological assessment. (Dkt. No. 30 at ¶ 44.) Bonnstetter did not assert his *Shakman* claim until June 3, 2013. Based on a letter attached to the First Amended Complaint that refers to Shemitraku's previous discussions pertaining to his disqualification from the hiring process based on his polygraph test, Shemitraku apparently knew that he was no longer under consideration for employment as a Chicago police officer by November 8, 2012. (Dkt. No. 30 at ¶ 69; Dkt. No. 30-5.) Shemitraku did not assert his *Shakman* claim until October 14, 2013. Sauseda alleges that he learned on July 5, 2012, that he was removed from the eligibility referral list because of his age. Sauseda explained in a letter dated October 5, 2012, that it was his understanding "that some people have been granted a waiver due to age or certain situations." (Dkt. No. 30 at ¶ 78; Dkt. No. 30-6.) Sauseda did not assert his *Shakman* claim until October 14, 2013. Gutierrez claims that he learned in December 2012 that he would be removed from the eligibility referral list for a position as a Chicago police officer because he failed the psychological assessment. Gutierrez did not assert his *Shakman* claim until October 14, 2013. Each of these Plaintiffs knew about the circumstances leading up to their removal from the eligibility referral list—Bonnstetter, Shemitraku, and Gutierrez attended their respective examinations or tests, and Sauseda knew about his age—and learned about their removal more than six months prior to filing their initial complaints. Consequently, there is no

reason to equitably toll the statute of limitations, which had run by the time each filed their respective claim, because each Plaintiff had the information necessary to realize that he may have a claim. *See Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 860-61 (7th Cir. 2005) (doctrine of equitable tolling to be applied sparingly in the context of Title VII).

Buttita learned that she would be removed from the eligibility referral list for a position as a Chicago police officer because she failed to meet the educational requirement. (Dkt. No. 30 at ¶ 91.) Although she learned this from a letter dated October 9, 2012, the First Amended Complaint does not indicate when she received the letter. (*See* Dkt. No. 30 at ¶ 91.) The same is true for Khan, who received a letter dated January 12, 2012, on some undisclosed date indicating that he was removed from the eligibility referral list for failure to cooperate in the polygraph examination. (Dkt. No. 30 at ¶ 101.) Courts may only dismiss claims based on the statute of limitations where the complaint sets forth everything necessary to satisfy the affirmative defense. *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009). Here, this Court cannot determine whether Buttita's or Khan's *Shakman* claims are time-barred because the First Amended Complaint is silent as to when they learned that they were removed from the eligibility referral list.

### B.     Illinois Equal Protection Claims

There is no private cause of action for violations of art. 1, § 2 of the Illinois Constitution against employers who commit civil rights violations. *See Teverbaugh ex rel. Duncan v. Moore*, 724 N.E.2d 225, 229 (Ill. App. Ct. 2000) (no private cause of action for violations of art. 1, § 18); *see also Doe v. Champaign Community Unit 4 School District*, 11-CV-3355, 2012 WL 2370053, at *9 (C.D. Ill. Feb. 24, 2012) (predicting that Illinois Supreme Court would not find a private cause of action under art. 1, §§ 2 and 6 of the Illinois Constitution because there are adequate remedies available under federal and state law) *and Bourbeau v. Pierce*, 02-CV-1207-MJR, 2008 WL 370677, at *7 (S.D. Ill. Feb. 11, 2008) ("Because there is no self-executing

language in [art. 1, § 6] of the Illinois Constitution, it includes no private right of action."). This Court finds these cases persuasive as to whether there is a private cause of action under art. 1, § 2 of the Illinois Constitution. Specifically, art. 1, § 2 of the Illinois Constitution does not expressly provide for a private cause of action (*compare* art. 1, § 2, which is silent as to enforceability, *with* art. 1, § 17 ("[t]hese rights are enforceable without action by the General Assembly)) and there is no reason to imply a private cause of action because Illinois law provides adequate remedies for violations of equal protection, *see Metzger v. DaRosa*, 805 N.E.2d 1165, 1168 (Ill. 2004) (identifying whether a private right of action is necessary to provide an adequate remedy for violations of the statute is necessary as a factor in determining whether to imply a private cause of action). Illinois law provides a remedy against employers who commit civil rights violations. 775 ILCS 5/8-111(A)(4). Therefore, this Court finds that the Plaintiffs cannot state a claim under art. 1, § 2 of the Illinois Constitution.

The case cited by the Plaintiffs, *Safanda v. Zoning Board of Appeals of City of Geneva*, 561 N.E.2d 412, 417-18 (Ill. App. Ct. 1990), does not persuade this Court otherwise because it is factually distinct. Significantly, the plaintiff in *Safanda* sought to have a zoning ordinance declared void and unconstitutional as applied to her property. *Safanda*, 561 N.E.2d at 415. That is not the case here, as the Plaintiffs have not challenged the constitutionality of any legislation. Further, *Safanda* does not address whether a direct cause of action under art. 1, § 2 was necessary due to the lack of an adequate remedy. Again, that is not the case here as Illinois law provides a remedy for equal protection violations in the employment context.

### C.     Conspiracy Claims

The Plaintiffs have not stated a conspiracy claim under 42 U.S.C. § 1983. "For liability under § 1983 to attach to a conspiracy claim, defendants must conspire to deny plaintiffs their constitutional rights." *Hill v. Shobe,* 93 F.3d 418, 422 (7th Cir. 1996). Here, the Plaintiffs allege

that the Defendants conspired to deny the Plaintiffs equal protection of the laws by administering psychological exams unfairly and unequally. (Dkt. No. 30 at ¶ 112.) The Plaintiffs further allege that the Defendants did so to elude the requirements of the *Shakman* Accord. Because the Plaintiffs have not alleged that they belong to a protected class or that the Defendants conspired against a protected class, this Court treats their equal protection claims as "class of one" claims. *See*, *e.g.*, *Charleston v. Board of Trustees of University of Illinois at Chicago*, 741 F.3d 769, 775 (7th Cir. 2013) (noting that plaintiff who did not allege membership in a protected group asserted "class of one" claim).

"A class-of-one claim need not allege discrimination based on a suspect classification, but must allege that the plaintiff was singled out arbitrarily, without rational basis, for unfair treatment." *Abcarian v. McDonald*, 617 F.3d 931, 938 (7th Cir. 2010). The Plaintiffs note that *Abcarian* recognized that "class-of-one claims cannot be based on the highly discretionary and individualized sorts of decisions that public employers must make about their employees." (Dkt. No. 52 at 23 (citing *Abcarian*, 617 F.3d at 938).) This does not help the Plaintiffs, who argue, "the Hiring Plan specifically detailed and proscribed in what manner the City could administer the hiring processes to comply with the Shakman Accord." (Dkt. No. 52 at 23.) Even though the hiring plan sets forth hiring practices for the City to follow, those hiring practices still require the "highly discretionary and individualized sorts of decisions" described in *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 128 S.Ct. 2146 (2008). This is particularly true in the context of the Plaintiffs' claims—claims based on failed psychological interviews. Screening applicants to determine whether they have mental and physical abilities compatible with the rigors of police work does not raise equal protection concerns. *See Engquist*, 553 U.S. at 605, 128 S.Ct. at 2155 ("Thus, the class-of-one theory of equal protection—which presupposes that

like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review—is simply a poor fit in the public employment context."); *see also Geinosky v. City of Chicago*, 675 F.3d 743, 747 ("Under *Engquist,* the prohibition on class-of-one claims in the public employment context is categorical.") Therefore, this Court dismisses the Plaintiffs' conspiracy claim under 42 U.S.C. § 1983.

The Plaintiffs also have not stated a claim under 42 U.S.C. § 1985(3). To state a claim under 1985(3), the Plaintiffs must allege (1) the existence of a conspiracy (2) to deprive a person or class of equal protection of the laws, (3) that an act in furtherance of that conspiracy occurred and (4) injury resulted from the conspiracy. *Brokaw v. Mercer County*, 235 F.3d 1000, 1024 (7th Cir. 2000). This claim requires discrimination based on race, sex, religion, ethnicity, or political loyalty. *Id.* As discussed above, Plaintiffs have not alleged that they belong to a protected group and a "class of one" claim has no place in the context of public employment. This claim does refer to "improper considerations," but the Plaintiffs do not allege what "improper considerations" the Defendants used in their alleged conspiracy. Instead, the Plaintiffs leave this Court and the Defendants to speculate as to which improper considerations are at issue, which warrants dismissal. *See Agnew v. National Collegiate Athletic Association*, 683 F.3d 328, 334 (7th Cir. 2012) ("We have explained, however, that a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under the Federal Rules of Civil Procedure, in which case a dismissal of the complaint is proper.") (internal quotation marks omitted).

And even if Slowik's claims of unlawful political discrimination based on his veteran's status and his beliefs, perceptions, and experiences regarding war—all of which he allegedly discussed during his psychological interview—placed him within a protected class for either of

the Plaintiffs' conspiracy claims, a notion for which the Plaintiffs cite no authority, the doctrine of res judicata would bar his claim for the same reasons it bars his *Shakman* claim. Therefore, this Court dismisses the Plaintiffs' conspiracy claim under 42 U.S.C. § 1983.

## **CONCLUSION**

For the reasons stated herein, this Court grants the Defendants' motions to dismiss.


_____

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date:  July 24, 2014